# EXHIBIT D

## COMPLAINT/AFFIDAVIT FOR WARRANT OF ARREST

CM 061715

# COMPLAINT / AFFIDAVIT FOR WARRANT OF ARREST

Warrant No.:_____

**THE STATE OF TEXAS** §
§
**COUNTY OF BEXAR** §

THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE LAWS OF THE STATE OF TEXAS, AND BEING FIRST DULY SWORN, ON OATH MAKES THE FOLLOWING STATEMENTS AND ACCUSATIONS:

1. Affiant believes that a specific criminal offense has been committed against the peace and dignity of the state, to wit:

   | | |
   |---|---|
   | Offense Name: | Tampering with Governmental Record |
   | Offense Statute: | §37.10(c)(1), Penal Code (MA) |
   | TXDPS Offense Code: | 73990623 |
   | Bexar County Offense Code: | |
   | Offense Date: | 05/22/2019 |

2. Affiant believes, and hereby charges and accuses, that the above-listed offense was committed in Bexar County, Texas on or about May 22, 2019 by the following named and described individual:

   **Sylvia Ann Gonzalez, a white female, Date of Birth: 08/30/1946**
   **(SID #: 1122375)**

3. Identification and qualifications of Affiant:

   My name is Alex Wright and I am the Affiant herein. I am a peace officer under the laws of the State of Texas and am currently commissioned as a Special Detective with the Castle Hills Police Department ("CHPD") in Bexar County, Texas. In my role as a Special Detective I am assigned, as needed, to conduct investigations which might otherwise be considered sensitive, or delicate, either due to the nature of the crime or because of the parties involved. I have over twenty (20) years of experience as a police officer and hold a Master Peace Officer license from the Texas Commission on Law Enforcement. I am also a licensed police instructor and field training officer. During my tenure as a Texas peace officer I have received extensive training and experience in the field of criminal investigation and have participated in numerous investigations into a wide variety of both state and federal criminal law violations. I also have a Bachelor of Science degree in Criminal Justice with a major in Law Enforcement from Southwest Texas State University. I also have a Juris Doctorate degree from St. Mary's University School of Law, and I am licensed to practice law in the State of Texas and 14 other states.

4. I conducted interviews, obtained statements from witnesses, and reviewed evidence during which the following information and facts were obtained, causing me to have probable cause for the above-stated beliefs and accusations:

   On June 18, 2019 I was contacted by CHPD Police Chief Johnny Siemens and was assigned as the lead investigator on this case, bearing CHPD Case No. 2019-06-0058.

Complaint / Affidavit for Warrant of Arrest-*Sylvia Ann Gonzalez*—Page 1 of 6       Affiant's Initials: ___

I obtained the initial offense report which was written as a "Theft" report. The report referenced some petitions belonging to the city which were allegedly stolen by a Castle Hills alderman named Sylvia Ann Gonzalez (herein sometimes "Gonzalez" or "Defendant Gonzalez"). The Complainant is the current mayor of the City of Castle Hills, Texas, Edward "JR" Trevino II (herein sometimes "Mayor Trevino"). Another primary witness is CHPD Captain Esteban "Steve" Zuniga (herein sometimes "Capt. Zuniga").

On June 24, 2019 I met with Mayor Trevino (as the original Complainant) and interviewed him about the events in question, and he responded by providing me with the following facts:

Defendant Gonzalez was, until July 9, 2019, serving as an alderwoman for the City of Castle Hills, Texas. From her very first meeting in May of 2019 she (along with another alderwoman) has been openly antagonistic to the city manager, Ryan Rapelye, wanting desperately to get him fired. Part of her plan to oust Mr. Rapelye involved collecting signatures on several petitions to that effect.

On the evening of May 21, 2019 a public meeting of the Castle Hills City Council was held at city hall, located at 209 Lemonwood Dr., Castle Hills, Bexar County, Texas 78213. This meeting was presided over by Mayor Trevino. During the public commentary portion of the meeting, a citizen presented twenty-six (26) separate petitions (the "Petitions") to Mayor Trevino which each called for the removal of the city manager Ryan Rapelye (under the guise of "FIX OUR STREETS"). As the presiding officer of the city council meeting, Mayor Trevino accepted the Petitions as city property and put them among his papers for filing with the city secretary at the conclusion of the meeting. At that moment the Petitions became city property and "governmental records" as defined by §37.01(2), Penal Code.

Also during the public commentary portion of the meeting, a citizen named Chalene Martinez took the microphone and said that Defendant Gonzalez had personally come to her home to solicit her signature upon one of the Petitions. Ms. Martinez then publically accused Gonzalez of misleading her regarding the actual nature and purpose of the petitions, and said that Gonzalez asked her to sign under false pretenses. The council meeting went long and due to the lateness of the hour Mayor Trevino announced a recess and said that the meeting would resume at 4pm the next day, May 22, 2019.

The following day, Mayor Trevino arrived early for the continuation of the city council meeting. In light of the serious allegations made by citizen Chalene Martinez the night before, Mayor Trevino used this time to start sifting through the Petitions in search of any anomalies. As the 4pm meeting start time drew near, Mayor Trevino attached a large black binder clip to the stack of 26 Petitions and placed them on top of his other paperwork, all of which was in his working area on the desktop of the dais (the "dais" is the bench at which the city council sits). During the meeting he noticed that the Petitions were gone and he assumed the city secretary had collected them. He also noticed that an identical binder clip and paper stack size was now inside Gonzalez' large 3-ring binder, but thought it to be a coincidence. Defendant Gonzalez' seat on the dais is to the right of, and adjacent to, Mayor Trevino's seat.

**Complaint / Affidavit for Warrant of Arrest**-*Sylvia Ann Gonzalez*—Page 2 of 6    Affiant's Initials: 

At the end of the meeting the city secretary asked Mayor Trevino for the original Petitions, causing him to realize that she hadn't collected them. These were the original Petitions, carried over from the previous night's meeting and were still in Mayor Trevino's possession as the presiding officer who received them. At this point, recalling seeing the same binder clip and paper stack size inside Defendant Gonzalez' 3-ring binder, Mayor Trevino suspected that Defendant Gonzalez had taken the Petitions. Mayor Trevino then waived to get the attention of CHPD Capt. Zuniga who was near the back of the room helping to shut off lights. Capt. Zuniga walked to where Mayor Trevino was standing on the dais.

(Note regarding Capt. Zuniga's presence at the meeting: *Each city department sends a representative to city council meetings so they are on-hand to answer any questions, as needed. On this particular evening Capt. Zuniga was representing the police department in the place of Chief Siemens who could not attend.*)

Mayor Trevino explained to Capt. Zuniga that he suspected Defendant Gonzalez had taken the Petitions. Mayor Trevino then observed as Capt. Zuniga asked Defendant Gonzalez if she had taken the Petitions, which Gonzalez promptly denied. Capt. Zuniga then asked Defendant Gonzalez if she was sure, at which point Gonzalez walked back to her spot on the dais. Once back at her seat with her 3-ring binder in front of her, Defendant Gonzalez opened her 3-ring binder and then started slowly flipping through its contents, stopping before reaching the black binder clip at which point she declared, again, that she did not have the Petitions. Mayor Trevino explained that the petitions were clearly visible but Gonzalez was just trying to avoid "finding" them. Mayor Trevino and Capt. Zuniga then both pointed to the clearly visible black binder clip at the back of Defendant Gonzalez' 3-ring binder. At that point Defendant Gonzalez simply pulled the black binder clip out of her 3-ring binder, revealing that these were indeed the missing original Petitions. As she produced the Petitions, Gonzalez never questioned that they belonged to the city or tried to claim that they were hers. As the incident drew to a close, the Petitions were given to the city secretary for safekeeping as governmental records.

On June 27, 2019 I met with Esteban "Steve" Zuniga, a Captain with the Castle Hills Police Department, and interviewed him about the events in question, and he responded by providing me with the following facts, which I found to be consistent with Mayor Trevino's statement of facts:

In addition to supporting the account of events provided to me by Mayor Trevino, Capt. Zuniga's account also mentions additional observations. Defendant Gonzalez twice denied having the Petitions. When Gonzalez did, eventually, pull the petitions out of her 3-ring binder, Capt. Zuniga reports that Gonzalez told him that she thought those were extras. But Capt. Zuniga found that statement odd because, if true, then he questioned why she twice told him, only moments before, that she did not have the Petitions in her binder. Further, if she thought she had a right to them (because they were copies) then surely she would have spoken up when asked. Also, Defendant Gonzalez moved very slowly while seemingly pretending to look for the Petitions in her 3-ring binder, which she ultimately found and produced.

I then watched the surveillance videos from the council chambers which covered the timeframe of the events previously described (which had previously been secured as evidence by officers prior to my assignment to the case). This is what I observed:

### *Video 1 – Petitions Taken*:

The time marks listed below do not refer to the time of day, but rather they refer to the minutes and seconds into the video at which that scene is visible.

4:34: For the first time this day, Gonzalez approaches her seat on the dais (to the right of, and adjacent to, Mayor Trevino's seat). At that time, Mayor Trevino is standing near his seat, but is facing the other way while engaged in a conversation. Gonzalez then moves to her left in order to reach over Mayor Trevino's stack of documents.

4:36: After looking around, Gonzalez picks up the Petitions from on top of Mayor Trevino's binder and quickly pulls them toward her seat. There is no mistaking that the Petitions were in the Mayor's pile of documents, not Gonzalez' pile.

4:41: Gonzalez turns the Petitions toward her, looks at them directly, and begins flipping through pages. There is no mistake—Gonzalez knows what she is holding.

4:43: Gonzalez organizes the Petitions by knocking them on the desk.

4:47: Gonzalez moves the Petitions to the desktop in front of her, lays them down on the desk to the right of her binder, and then opens her binder up so that the cover obscures the Petitions.

4:51: Mayor Trevino notices activity near his binder and reaches over to pick his binder up, not realizing that Gonzalez has just taken the Petitions.

This video clearly shows Defendant Gonzalez intentionally concealing and removing the Petitions from city custody.

### *Video 2 – Petitions Recovered*:

The time marks listed below do not refer to the time of day, but rather they refer to the minutes and seconds into the video at which that scene is visible.

1:40: It is evident that Mayor Trevino has realized that he no longer has the Petitions and returns to his seat on the dais to look for them.

1:43: Mayor Trevino bends over, looks at Gonzalez' binder, and confirms that the large binder clip is still inside her 3-ring binder. This is consistent with Mayor Trevino's sworn statement wherein he said he recalled seeing the binder clip in Defendant Gonzalez' 3-ring binder. At this same time Defendant Gonzalez can been seen at the far left side of the frame.

1:47: Mayor Trevino waves for Capt. Zuniga to come his way, toward the dais.

2:05: Mayor Trevino is talking to Capt. Zuniga.

3:16: Capt. Zuniga has walked to Defendant Gonzalez and is talking to her.



4:00: Defendant Gonzalez has returned to her seat position at the dais and has pulled her 3-ring binder toward her.

4:06: Defendant Gonzalez slowly flips through the contents of her binder, stopping before reaching the black binder clip. It appears as though Defendant Gonzalez was trying to avoid "finding" the Petitions which she has already affirmatively stated that she does not have.

4:20: Defendant Gonzalez appears to be running out of papers to slowly flip through and will soon reach the Petitions.

4:24: Mayor Trevino and Capt. Zuniga finally just point to the obvious binder clip containing the Petitions. It appears to me that Defendant Gonzalez realized that she could pretend no longer, so she simply pulled the Petitions out of her binder without further hesitation.

4:46: The Petitions are given to the custody of the city secretary for safekeeping as governmental records.

After watching these videos I was able to confirm the accounts of the events as they were given to me by Mayor Trevino and Capt. Zuniga.

Of particular note to me was that these videos show several furtive movements by Defendant Gonzalez. Gonzalez appeared to be purposefully avoiding "finding" the Petitions by feigning her failure to notice the obvious binder clip which those around her could clearly see. Also, she moved extremely slowly while looking through her 3-ring binder, only thumbing through a few pages at a time, much more slowly than someone would do if they were trying to prove that they didn't have the Petitions. It seemed as if she was wasting time hoping for some form of rescue.

On July 2, 2019 I met with Capt. Zuniga and obtained his sworn statement of the events, which was wholly consistent with the facts he provided to me during our previous interview.

On July 7, 2019 I met with Chalene Martinez, the citizen who spoke out against Gonzalez at the May 21, 2019 city council meeting. I interviewed her and obtained her sworn statement regarding the following events: Gonzalez had personally gone to Ms. Martinez' house on May 13, 2019 to get her signature on one of the petitions under false pretenses, by misleading her, and by telling her several fabrications regarding Ryan Rapelye which Ms. Martinez felt was damaging to his reputation. Although Defendant Gonzalez' interaction with Ms. Martinez does not have a direct bearing on the offense charged herein, it is relevant as it supports a motive for Defendant Gonzalez' desire to steal the petitions—before further scrutiny could be brought to bear upon Chalene Martinez' signature thereon.

On July 8, 2019 I met with Mayor Trevino and obtained his sworn statement of the events, which was wholly consistent with the facts he provided to me during our previous interview.

I also contacted Gonzalez several times during the course of my investigation, offering her the opportunity to give me her version of events; however she refused to talk to me.



5. My interviews and investigation of the witnesses discussed above revealed them to all be credible and reliable, and I find their reputations for truth and veracity to be excellent.

6. I then compared the facts which I had learned during my investigation with the elements of the offense charged, above, and found that the elements had been satisfied, as follows:

**Tampering with Governmental Record**
§37.10(c)(1), Penal Code (MA)

A person commits an offense if the person:
1. intentionally
2. destroys, conceals, removes, or otherwise impairs
3. the verity, legibility, or availability
4. of a governmental record

"governmental record" means anything belonging to, received by, or kept by government for information. §37.01(2), Penal Code.

In this case, the governmental records are the 26 Petitions which Defendant Gonzalez intentionally concealed and/or removed from being available.

**Conclusion:**

After reviewing the above-described facts, circumstances, witness statements, surveillance videos, and other evidence, and after taking into account all statutory exceptions to criminal liability, if any, I have concluded my investigation in this case. <u>I have good reason to believe, and do believe</u>, that **Sylvia Ann Gonzalez** committed the above-listed offense, against the peace and dignity of the state.

**WHEREFORE,** I hereby pray for the issuance of a warrant of arrest authorizing the arrest of **Sylvia Ann Gonzalez** and charging that she has committed the above-listed offense.

Respectfully submitted,

_[signature] #410_
Alex Wright, Affiant
Special Detective, Badge #410
Castle Hills Police Department

**SUBSCRIBED and SWORN** to before me by said Affiant on this the __17__ day of July, A.D., 2019, at __2:32__ o'clock __P__ .M.

_[signature]_
Hon. __Maren [illegible]__
                     Presiding
Judge, __175__ Judicial District Court
Bexar County, Texas