UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **SYLVIA GONZALEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.: 5:20-cv-01151-DAE** |
| | § | |
| **CITY OF CASTLE HILLS, TEXAS;** | § | |
| **EDWARD "JR" TREVINO, II,** | § | |
| **Mayor of Castle Hills, sued in his** | § | |
| **individual capacity; JOHN SIEMENS,** | § | |
| **Chief of the Castle Hills Police** | § | |
| **Department, sued in his individual** | § | |
| **capacity; and ALEXANDER WRIGHT,** | § | |
| **sued in his individual capacity,** | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME DEFENDANTS CITY OF CASTLE HILLS, TEXAS, EDWARD "JR" TREVINO, II, Mayor of Castle Hills, JOHN SIEMENS, Police Chief of Castle Hills and ALEXANDER WRIGHT, (hereinafter collectively referred to as "Defendants"), and file this their Motion to Dismiss Plaintiff's *Complaint for Retrospective Relief* ("the Complaint").[Dkt. 1]. Defendants seek dismissal Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and would respectfully show the Court as follows.

### I.
### NATURE OF THE LAWSUIT/FACTUAL ALLEGATIONS

1.     On September 29, 2020, Plaintiff SYLVIA GONZALEZ, a former council member of the City of Castle Hills (hereinafter "Plaintiff" and/or "Gonzalez") filed her *Complaint for Retrospective Relief* [Dkt. 1].

2.      The gravamen of Plaintiff's Complaint is that she seeks redress for an alleged unconstitutional arrest.  [Dkt. 1, ¶ 3, 88, Count I (¶¶ 137-149) and Count II (¶¶ 150-169].  Plaintiff asserts claims under 42 U.S.C. § 1983 against Defendants Trevino, Siemens and Wright [Count I] for violation of her First and Fourteenth Amendment rights by a retaliatory arrest.  [Dkt. 1, ¶¶ 137-149].  Plaintiff separately asserts claims under 42 U.S.C. § 1983 against the City of Castle Hills [Count II] by a retaliatory arrest.  [Dkt. 1, ¶¶ 150-169].  Plaintiff alleges that the Defendants participated in a scheme to punish and intimidate Plaintiff in retaliation for exercising her free speech rights.  [Dkt. 1, ¶¶ 139-141, 148-149, 152-163].

3.      According to the Complaint, Plaintiff was not personally arrested by any of the Defendants.  [Dkt. 1, ¶¶ 110-114].  Plaintiff pleads that she turned herself in when she learned that a warrant had been issued for her arrest. [Dkt. 1, ¶¶ 110-114].

4.      Plaintiff's alleges that she was arrested pursuant to a warrant.  [Dkt. 1, ¶¶ 26, 99, 101, 110-114, 126].  This means that there was an independent judicial determination of the existence of probable to arrest Plaintiff made by a magistrate. [Dkt. 1, ¶ 103, 126].  In fact, Plaintiff attached the "Complaint/Affidavit for Warrant of Arrest" to her Complaint.   [Dkt. 1-5, pgs. 2-7].  Defendants attach a true and correct, file stamped copy of the *Warrant of Arrest* and *Complaint/Affidavit for Warrant of Arrest* as Exhibit "A" and request that the Court take judicial notice of this public record.

5.      In the presence of probable cause, Plaintiff's retaliatory arrest claim fails as a matter of law. *See Nieves v. Bartlett,* 139 S. Ct. 1715, 1728, 204 L. Ed. 2d 1 (2019).  Defendants respectfully request that the Court dismiss Plaintiff's lawsuit in its entirety.

## II.
## APPLICABLE LAW

**Rule 12(b)(6).**

6.      If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED R. CIV. P 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 44, 556 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Rather, the court must be sure that the complaint alleges sufficient facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  When considering a motion to dismiss under Rule 12(b)(6) the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007)(quoting *In re Katerina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

7.      Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *See Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp.2d 734, 737-38 (S.D. Tex. 1998).  While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.  Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to

dismiss. *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002). As explained herein, Plaintiff failed to allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id; Nationwide BiWeekly Admin. Inc. v. Belo Corp.,* 512 F.3d 137, 140 (5th Cir. 2007).

8.      Moreover, in the presence of probable cause, Plaintiff's retaliatory arrest claim fails as a matter of law.  *See Nieves v. Bartlett,* 139 S. Ct. 1715, 1728, 204 L. Ed. 2d 1 (2019).

**Scope of the 12(b)(6) Inquiry.**

9.      In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the Court's inquiry is limited:

> In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *See Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 640 n. 2 (5th Cir. 2005). When a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims, however, the court can also properly consider those documents. *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 499 (5th Cir. 2000).

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.,* 920 F.3d 890, 900 (5th Cir. 2019)(emphasis added); *Villarreal v. Wells Fargo Bank, N.A.,* 814 F.3d 763, 766 (5th Cir. 2016).

10.     Federal Rule of Evidence 201 allows the Court to take judicial notice of a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201. "[D]istrict courts in this circuit have taken judicial notice of arrest warrants for the purpose of deciding motions to dismiss

under Rule 12(b)(6)." *See Scott v. White*, No. 1:16-CV-1287-RP, 2018 WL 2014093, at *3 (W.D.

Tex. Apr. 30, 2018)(citing *Shepherd v. Fanning,* No. CV 17–2694, 2017 WL 2671706, at *2 n.1

(E.D. La. June 21, 2017) and *LeBlanc v. City of Haltom City*, No. 4:10–CV–812–A, 2011 WL

2149908, at *4 n.3 (N.D. Tex. May 31, 2011); *see also, Sinegal v. City of El Paso*, 414 F. Supp.

3d 995, 1003 (W.D. Tex. 2019); *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 906 (E.D.

La. 2001); *Scott v. White*, No. 1:16-cv-1287-RP, 2018 WL 2014093, at *3–4 (W.D. Tex. Apr. 30,

2018).  This is particularly true in false arrest cases.

> "[C]ourts must consider the complaint in its entirety, as well as other sources courts
> ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,
> documents incorporated into the complaint by reference...." *Tellabs, Inc. v. Makor
> Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *United States ex rel. Riley v. St.
> Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). The emails, warrant,
> and other records considered in this Report and Recommendation were either
> attached to the Complaint as exhibits, judicially noticed public records, or
> referenced in the Complaint and provided by Defendant.

*Van Dyke v. Shackleford*, No. 419CV00786SDJKPJ, 2020 WL 5580162, at *3 (E.D. Tex. Sept. 1,

2020), *report and recommendation adopted*, No. 419CV00786SDJKPJ, 2020 WL 5571490 (E.D.

Tex. Sept. 16, 2020); *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir.1995)(court can take judicial

notice of state court orders when deciding a motion to dismiss); *Causey v. Par. of Tangipahoa*,

167 F. Supp. 2d 898, 906 (E.D. La. 2001); *Casanova v. City of Brookshire*, 119 F.Supp.2d 639,

651(S.D.Tex.2000) (evidence that arrest was carried out pursuant to valid arrest warrant forecloses

1983 claim for false arrest); *Bob Hamric Chevrolet, Inc. v. USA, Internal Revenue Service*, 849

F.Supp. 500 (W.D.Tex.1994); *Wright & Miller, Federal Practice and Procedure*: Civil 2d § 1357

at 299.

11.     Plaintiffs' *Complaint* repeatedly references the arrest warrant. [Dkt. 1, ¶¶ 26, 99, 101, 110-

114, 126].  Because Plaintiff does not contend that any of the individual Defendants personally

arrested her, the existence of the warrant is central to Plaintiff's claims.   Defendants attach the

following evidence for the Court's consideration and respectfully ask the Court to take judicial

notice of the fact that a warrant was issued for Plaintiff's arrest:

> Exhibit "A"   File stamped copy of *Warrant of Arrest* commanding that Plaintiff be taken
> into custody and the attached *Complaint/Affidavit for Warrant of Arrest*.[1]

**Qualified Immunity.**

12.      Qualified immunity, an affirmative defense, protects government officials in their personal

capacity performing discretionary functions not only from suit, but from "liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,

102 S. Ct. 2727, 73 L.Ed.2d 396 (1982); *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815,

172 L.Ed.2d 565 (2009).

> Qualified immunity protects government officials "from liability for civil damages
> insofar as their conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would have known." *Harlow v.
> Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). To
> determine whether a defendant is entitled to qualified immunity, this court engages
> in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation
> of a constitutional right and, if so, (2) whether the defendant's behavior was
> objectively reasonable under clearly established law at the time the conduct
> occurred. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001),
> overruled in part by *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L.Ed.2d
> 565 (2009); *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th
> Cir.2007) (citing *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir.2006)). "If the
> plaintiff fails to state a constitutional claim or if the defendant's conduct was
> objectively reasonable under clearly established law, then the government official
> is entitled to qualified immunity." *Hampton,* 480 F.3d at 363 (citing *Easter,* 467
> F.3d at 462). "The relevant, dispositive inquiry in determining whether a right is
> clearly established is whether it would be clear to a reasonable officer that his
> conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*,
> 560 F.3d 404, 410 (5th Cir.2009) (quoting Saucier, 533 U.S. at 202, 121 S. Ct.
> 2151). If the answer to either of the two questions is "no," qualified immunity
> applies and the government official is immune from suit. The plaintiff bears the
> burden of overcoming the qualified immunity defense. *Bennett v. City of Grand
> Prairie, Tex.*, 883 F.2d 400, 408 (5th Cir.1989). After the Supreme Court's decision

---

1 This document was also attached to Plaintiff's Complaint for Retrospective Relief.  [Dkt. 1-5].

in *Pearson*, 555 U.S. 223, 129 S. Ct. 808, courts have discretion as to which of the two qualified immunity prongs to address first.

*Castera Robles v. Cayton*, 454 F. App'x 373, 376–77 (5th Cir. 2011). "[A] defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution, or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001). The officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional right. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc).

13.     Although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir.2009). To meet this burden the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law and that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *See Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir.2005).

14.     Once a defendant raises a qualified immunity defense, the Fifth Circuit requires a plaintiff to meet a heightened pleading standard to show with factual detail and particularity why the defendant official cannot maintain the qualified immunity defense.   *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985); *see also Schultea v. Wood*, 47 F.3d 1427, 1429–34 (5th Cir. 1995)(en banc)("When a public official pleads the affirmative defense of qualified immunity . . . . the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply.").

15.    The Fifth Circuit revisited the *Schultea* standard (requiring plaintiff to support a "claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's contact at the time of the alleged acts") in *Morgan v. Hubert*, 335 Fed. Appx. 466, 472–73 (5th Cir.2009).  The Court explained the reasons for requiring a heightened pleading standard in the face of a defendant's assertion of qualified immunity:

> We did not ground any such requirement in Rule 9(b), but nevertheless required a plaintiff to plead more than conclusions. Specifically, we reasoned that "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants [emphasis added by Morgan panel]." "**Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury.**" *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir.1999).

*Morgan*, 335 Fed. Appx. at 469–70(emphasis added)(*citing Schultea*, 47 F.3d at 1432–34). Courts examine each officer's actions independently to determine whether he or she is entitled to qualified immunity. *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir.2012).

> To overcome a qualified immunity defense, the plaintiff must show that the officers could not reasonably believe that they had probable cause to arrest the plaintiff for any crime. *Id.; Cole v. Carson*, 802 F.3d 752, 764 (5th Cir.2015)("[T]he relevant actors must be aware of facts constituting probable cause to arrest or detain the person for any crime."). "[E]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009).

*Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 741 (S.D. Tex. 2016).

### III.
### PLAINTIFF'S RETALIATORY ARREST CLAIMS SHOULD BE DISMISSED

16.    As previously stated, the gravamen of Plaintiff's Complaint is that she seeks redress for an alleged unconstitutional arrest.  [Dkt. 1, ¶¶ 3, 137-169].  In two separate counts, Plaintiff brings retaliatory arrest claims against the individual Defendants in their individual capacity and the City

under *Monell*.   [Dkt. 1, ¶¶ 137-169].   Plaintiff's Complaint should be dismissed in its entirety

pursuant to the independent intermediary doctrine.

> "It is well settled that if facts supporting an arrest are placed before an independent
> intermediary such as a magistrate or grand jury, the intermediary's decision breaks
> the chain of causation for false arrest, insulating the initiating party." *Taylor v.
> Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano
> v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc). And "[o]ur precedents have
> applied this rule even if the independent intermediary's action occurred after the
> arrest, and even if the arrestee was never convicted of any crime." *Buehler v. City
> of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016).

*Curtis v. Sowell*, 761 F. App'x 302, 304 (5th Cir. 2019); *Jennings v. Patton*, 644 F.3d 297, 300–01

(5th Cir. 2011); *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016);

*Holcomb v. McCraw*, 262 F. Supp. 3d 437, 451–52 (W.D. Tex. 2017). "[U]nless an exception to

the independent intermediary rule applies, [the Warrant of Arrest] dooms [Plaintiff's] false arrest

claim." *Curtis*, 761 F. App'x at 304.

17.     Plaintiff's Complaint does not contain factual allegations sufficient to negate the existence

of probable cause.

> [I]f probable cause "exists, any argument that the arrestee's speech as opposed to
> her criminal conduct was the motivation for her arrest must fail, no matter how
> clearly that speech may be protected by the First Amendment." *Mesa*, 543 F.3d at
> 273

*Harvey v. Montgomery Cty., Tex.*, 881 F. Supp. 2d 785, 804 (S.D. Tex. 2012); *Mesa v. Prejean*,

543 F.3d 264, 273 (5th Cir. 2008)("Of course, this is nothing more than a recognition that 'the

Fourth Amendment's concern with "reasonableness" allows certain actions to be taken in certain

circumstances, whatever the subjective intent' of the officer.")(quoting *Wren v. United States*,

517 U.S. 806, 814, 116 S. Ct. 1769, 135 L.Ed.2d 89 (1996)).

18.     "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of

probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724, 204 L. Ed. 2d 1 (2019);

*Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002)("[R]etaliatory criminal prosecutions in violation of the First Amendment are actionable only if a plaintiff can also prove the common-law elements of malicious prosecution, including the absence of probable cause to prosecute"); *Curtis v. Sowell*, 761 F. App'x 302, 305 (5th Cir. 2019)(trial court did not err in dismissing plaintiff's claim when plaintiff could not establish the absence of probable cause).

19.     Plaintiff fails to allege that there is any "taint" or "other facts supporting the inference" of such taint existed in the process of obtaining of the warrant. *McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017); *Hand,* 838 F.2d at 1428.  In the present case, all relevant facts were presented to the Magistrate, that related to Plaintiff's criminal conduct, including the motive that Plaintiff may have been trying to steal the petitions because of anticipated scrutiny into the signatures on the petitions. [Dkt. 1-5, pg. 6]. *See Patterson v. J.M. Armatys*, 808 F.Supp. 550, 553 (E.D.Tex.1992) (motion to dismiss proper when facts do not allege that officers mislead magistrate when obtaining arrest warrant).

20.     Plaintiff's Complaint makes the conclusory observation that the *Complaint/Affidavit For Warrant of Arrest* used the "brief, inconclusive statements made by Chalene Martinez during the meeting on May 21" but offers no additional criticism of the Affidavit.  [Dkt. 1, ¶ 103]. This is not a case where "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S. Ct. 1092, 1098, 89 L. Ed. 2d 271 (1986).  "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Mayfield v. Currie*, No. 19-60331, 2020 WL 5638997, at *3 (5th Cir. Sept. 22, 2020), as revised (Sept. 23, 2020)(*quoting Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc); *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005)).  In this case, the elements of

probable cause are clearly set forth by reference to sworn statements of individual witnesses and a detailed examination of a videotape of the events which supports the individual sworn statements. [Dkt. 1-5]. The *Malley* exception does not apply.

21.    Plaintiff's Complaint fails to plead factual allegations to demonstrate that the *Complaint/Affidavit For Warrant of Arrest* contains false material information. *See Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978); *Mayfield v. Currie*, No. 19-60331, 2020 WL 5638997, at *3 (5th Cir. Sept. 22, 2020), as revised (Sept. 23, 2020).  Moreover, all of the factual recitations in the *Affidavit* can be independently verified by examination of the sworn statements and the videotape evidence.  Therefore, the *Franks* exception does not apply.

22.    Plaintiff's arrest was as a result of a warrant issued by an independent intermediary, being a Bexar County District Court Judge who made an independent determination that there was probable cause, and Plaintiff has failed to plead facts to support any of the exceptions to the independent intermediary doctrine.   The Court should dismiss Plaintiff's lawsuit in its entirety.

## IV.
## QUALIFIED IMMUNITY

23.    Plaintiff's Complaint should be dismissed against all of the individual Defendants because they enjoy qualified immunity.  The Court should examine each officer's actions independently to determine whether he or she is entitled to qualified immunity. *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir.2012).  Plaintiff has pled only conclusory allegations, unsupported by facts, that the individual Defendants worked in concert with each other.   Therefore, the Court should ignore the conclusory allegations and examine the factual allegations against each Defendant separately.

**Mayor Trevino.**

24.    Plaintiff's factual allegations indicate that Mayor Trevino witnessed a crime and made a complaint.  Plaintiff and Mayor Trevino sat next to each other at the May 22, 2020 City Council

meeting.  [Dkt. 1, ¶ 61].  Mayor Trevino wanted to talk with Plaintiff about the missing City

documents (the petitions) and was present when the missing petitions were found in Plaintiff's

possession.  [Dkt. 1, ¶¶ 68-77].  Plaintiff alleges that on May 24, 2019, Mayor Trevino confronted

Plaintiff about stealing the petitions.  [Dkt. 1, ¶ 89].  Mayor Trevino made out a criminal complaint.

[Dkt. 1, ¶¶ 103, 140.a.].[2]  These factual allegations are insufficient to defeat the assertion of a

qualified immunity defense.

> The doctrine of qualified immunity protects government officials from civil
> damages liability when their actions could reasonably have been believed to be
> legal. This immunity protects all but the plainly incompetent or those who
> knowingly violate the law, so we do not deny immunity unless existing precedent
> must have placed the statutory or constitutional question beyond debate. The basic
> steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to
> defeat qualified immunity must show: (1) that the official violated a statutory or
> constitutional right, and (2) that the right was 'clearly established' at the time of the
> challenged conduct.

*Morgan v. Swanson*, 659 F.3d 359, 370–71 (5th Cir. 2011)(internal references omitted).

25.     Plaintiff has not pled facts to show that Mayor Trevino's actions, in witnessing and

reporting a criminal offense caused Plaintiff's alleged injuries.   Moreover, any conclusory

allegations of causation fail because a Bexar County District Judge found probable cause and

issued a warrant for Plaintiff's arrest.

26.     Plaintiff's factual allegations about the actions of Mayor Trevino, who is not alleged to be

a law enforcement officer and who did not participate in the arrest of Plaintiff, do not demonstrate

a violation of a "clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow*, 457 U.S. at 818.  Witnessing and reporting a crime cannot be a

violation of constitutional rights.   The Court should dismiss Plaintiff's claims against Mayor

---

2  Plaintiff alleges that Mayor Trevino was somehow involved in the assignment of Special Investigator Wright. [Dkt.
1, ¶ 140.c.].  However, Plaintiff fails to plead any facts that support this conclusory statement.

Trevino because Plaintiff has not pled sufficient facts to defeat Mayor Trevino's assertion of qualified immunity.

**Police Chief Siemens.**

27.     Plaintiff's factual allegations indicate that Chief Siemens did little more than inform a subordinate of an anticipated report and assign a criminal investigation to an investigator.  Plaintiff alleges that Chief Siemens told Sgt. Paul Turner that Mayor Trevino would contact Sgt. Turner "in reference to filing a criminal complaint." [Dkt. 1, ¶ 89].  Chief Siemens later assigned the investigation to Special Detective Wright.  [Dkt. 1, ¶ 92, 140.c.].[3] These factual allegations are insufficient to defeat the assertion of a qualified immunity defense.

28.     Allegations that Chief Siemens informed a subordinate about an anticipated complaint and made an assignment of a criminal allegation to a detective do not demonstrate a violation of a "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S.  at 818.

29.     Plaintiff has not pled facts to show that Chief Siemens' actions caused Plaintiff's alleged injuries.  Moreover, any conclusory allegations of causation fail because a Bexar County District Judge found probable cause and issued a warrant for Plaintiff's arrest.

30.     Plaintiff's factual allegations about the actions of Chief Siemens, who did not participate in the investigation or arrest of Plaintiff, are not sufficient under *Harlow*.  Plaintiff has not met her burden and the Court should dismiss Plaintiff's claims against Chief Siemens because Plaintiff has not pled sufficient facts to defeat Chief Siemens' assertion of qualified immunity.

---

3 Though not important for the purposes of this Motion to Dismiss, Sgt. Turner was investigating allegations of fraudulent signatures reportedly placed on the petitions.   Special Detective Wright's investigation was a separate investigation of Plaintiff's actions at the May 22, 2019 City Council meeting.

**Special Detective Wright.**

31.     Plaintiff's factual allegations about Special Detective Wright ("Wright") seem to be conclusory allegations about his investigation.  Plaintiff alleges that Wright interviewed witnesses and conducted an investigation.  [Dkt. 1, ¶ 96, 140.d.].  Wright determined that the evidence indicated that a criminal act had been committed. [Dkt. 1, ¶ 97].  Wright submitted a *Complaint/Affidavit For Warrant of Arrest* to a Bexar County District Judge.  [Dkt. 1, ¶¶ 99, 100, 103, 140.d.; Dkt. 1-5].  These allegations are not sufficient to overcome Wright's assertion of the qualified immunity defense.

32.     Allegations that Wright conducted a criminal investigation, without more, do not demonstrate a violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

33.     Plaintiff has not pled facts to show that Wright's actions caused Plaintiff's alleged injuries. Moreover, any conclusory allegations of causation fail because a Bexar County District Judge found probable cause and issued a warrant for Plaintiff's arrest.

34.     Plaintiff's factual allegations about Wright's actions, which appear to be normal steps in a criminal investigation, are not sufficient to meet the *Harlow* standard.  Plaintiff has not met her burden and the Court should dismiss Plaintiff's claims against Special Detective Wright because Plaintiff has not pled sufficient facts to defeat his assertion of qualified immunity.

## V.
## *MONELL*

35.     The Court should dismiss Plaintiff's *Monell* claims against the City because Plaintiff's Compliant does not contain sufficient factual allegations to support a *Monell* claim.  In order to impose liability on the City, Plaintiff must show that the City's *policy* caused Plaintiff's alleged constitutional injury.

> The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir.2003). "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir.2000). However, this "single incident exception" is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker. *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir.2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir.2005)).

*Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Plaintiff's Complaint does not contain sufficient factual allegations to support "single incident" liability. While Mayor Trevino may be a final policy maker for certain purposes, Plaintiff's allegations indicate that he witnessed and reported a crime. These allegations do not support a single incident theory. Chief Siemens may be a final policy maker for certain purposes, but Plaintiff's allegations are that he informed a subordinate about an anticipated complaint and he assigned a matter to an investigator. These allegations do not support a single incident theory. Plaintiff's Complaint does not contain sufficient factual allegations to show that Special Detective Wright is a final policy maker.

> A municipal policymaker is someone who has "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481, 106 S. Ct. 1292. Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law. *Id.* at 482, 106 S. Ct. 1292.

*Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Plaintiff's Complaint contains no factual allegations to support the conclusion that any of the individual Defendants are the final policy maker for the City.

36.     Plaintiff's complaint does not allege that any written policy of the City caused her alleged constitutional violation. Plaintiff alleges that six (6) persons (three of whom are not Defendants) who are final policymakers made a deliberate choice to retaliate against her resulting in her arrest.

[Dkt. 1, ¶¶ 155-161].   However, Plaintiff's Complaint contains no factual allegations about how these persons accomplished this feat.   Without factual allegations to support such conclusory claims, Plaintiff has not met her "obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action . . ." *Twombly*, 550 U.S. at 555.   The Court should dismiss Plaintiff's *Monell* claims against the City.

37.     Plaintiff cannot show that a City policy *caused* her alleged constitutional violation.   A Bexar County District Judge found probable cause and issued a warrant for Plaintiff's arrest.   *See* Exhibit "A."   The issuance of the warrant negates causation.

38.     Finally, Plaintiff attempts to plead two incidents that she claims show "a history of cracking down on disfavored speech."   [Dkt. 1, ¶¶ 166-167].   Plaintiff omits to identify the alleged victims of this alleged policy.   [Dkt. 1, ¶¶ 166-167]. Plaintiff cannot identify the year that the first incident allegedly occurred.   [Dkt. 1, ¶ 166].   These allegations do not include an arrest, or a false arrest. [Dkt. 1, ¶¶ 166-167].   Taken as true, the only factual allegation with any detail indicates a threat by a former Mayor to have the Police Department issue citations for sign violations and to report that a particular City resident was responsible for the citations.   [Dkt. 1, ¶ 167].   It is not clear how this allegation would be a Constitutional violation, but it certainly is not akin to an allegation of false arrest.   Plaintiff's Complaint does not reference a single previous incident of false arrest.

39.     A pattern of similar incidents can be used to show deliberate indifference.   When a policy does not facially violate a federal right, a plaintiff "must show that the policy was adopted or maintained with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). A plaintiff must demonstrate that the municipal action reflects "the

requisite degree of culpability"—that is, "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Valle,* 613 F.3d at 542 (quoting *Brown*, 520 U.S. at 404, 411). "Deliberate indifference is a high standard—a showing of simple or even heightened negligence will not suffice." *Id.*  Deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

> A pattern is tantamount to official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984) (en banc)). Where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842. It is thus clear that a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citations omitted). **A pattern requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question**." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir.2005).

> A pattern also requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1989).

*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850–51 (5th Cir. 2009)(emphasis added). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011).

40.     Plaintiff's Complaint does not show any sufficiently similar prior incidents upon which to base an allegation of a particular policy, much less that any of the six (6) alleged policy makers had knowledge of and were deliberately indifferent to a known danger.  The Court should dismiss Plaintiff's *Monell* claims against the City.

# VI.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiff's claims identified above pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants request such other and further relief to which they may show themselves to be justly entitled, at law and in equity.

SIGNED this 12th day of October 2020.

Respectfully submitted,

Denton Navarro Rocha Bernal & Zech, P.C.
attorneys & counselors at law • rampagelaw.com
A Professional Corporation
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745
512/279-6431
512/279-6438 (Facsimile)
smtschirhart@rampagelaw.com
lfdenton@rampagelaw.com

By: _____

SCOTT M. TSCHIRHART
State Bar No. 24013655
LOWELL F. DENTON
State Bar No. 05764700

*Attorneys for Defendants*
*The City of Castle Hills, Texas; Edward*
*"JR" Trevino, II; John Siemens; and*
*Alexander Wright*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served in accordance with the Federal Rules of Civil Procedure on this 12th day of October 2020, to the following:

Anya Bidwell                                               **E-FILE NOTIFICATION**
Will Aronin
Patrick Jaicomo
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203

*Attorneys for Plaintiff*
*Sylvia Gonzalez*

_____
SCOTT M. TSCHIRHART
LOWELL F. DENTON

CM 061715

# WARRANT OF ARREST

FILED
DISTRICT CLERK
BEXAR CO. TEXAS

Warrant No.:_____

2019 JUL 17 P 2:53

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE DISTRICT COURT** |
| **vs.** | § | **of BEXAR COUNTY, TEXAS** |
| **Sylvia Ann Gonzalez, Defendant** | § | **175.. JUDICIAL DISTRICT** |

IN THE NAME OF THE STATE OF TEXAS, to any peace officer of any county within the State of Texas, greetings:

You are hereby COMMANDED TO TAKE THE BODY OF:

**Sylvia Ann Gonzalez, a white female, Date of Birth: 08/30/1946 (SID#: 1122375)**

if to be found in your county, and him or her safely keep so that you will have him or her before the Court, in the City of San Antonio, Bexar County, Texas, to be held forthwith to answer the State of Texas, wherein he or she is charged with the following offense alleged by complaint under oath to have been committed against the peace and dignity of the state:

| | |
|---|---|
| Offense Name: | <u>Tampering with Governmental Record</u> |
| Offense Statute: | §37.10(c)(1), Penal Code (MA) |
| TXDPS Offense Code: | 73990623 |
| Bexar County Offense Code: | _____ |
| Offense Date: | 05/22/2019 |
| Agency & Case No.: | Castle Hills PD (ORI #: TX0150300); Case No.: 2019-06-0058 |
| Investigating Officer: | Special Detective Alex Wright #410 |

Following arrest, you may release the accused if he or she posts good and sufficient bond in the amount stated below.

HEREIN FAIL NOT, but have you this writ before said Court with your return thereon, showing how you have executed same.

Given under my hand and signature, in the City of San Antonio, Bexar County, Texas on this the ___17th___ day of July, A.D., 2019, at ___2:34___ o'clock ___P___ .M.

BOND $ ___15,000___

Hon. _____

Judge, ___175th___ Judicial District Court
Bexar County, Texas   Presiding

## Peace Officer's Return

Came to hand on the _____ day of _____, _____, at _____ o'clock ____ .M.

Executed on the _____ day of _____, _____, at _____ o'clock ____ .M. by arresting the within named person at the location of:_____.

By: _____ Agency and Badge or ID:_____

**Exhibit "A"**

## CM 061715

# COMPLAINT / AFFIDAVIT FOR WARRANT OF ARREST

Warrant No.:_____

**THE STATE OF TEXAS** §
§
**COUNTY OF BEXAR** §

THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE LAWS OF THE STATE OF TEXAS, AND BEING FIRST DULY SWORN, ON OATH MAKES THE FOLLOWING STATEMENTS AND ACCUSATIONS:

1. Affiant believes that a specific criminal offense has been committed against the peace and dignity of the state, *to wit*:

| | |
|---|---|
| Offense Name: | <u>Tampering with Governmental Record</u> |
| Offense Statute: | §37.10(c)(1), Penal Code (MA) |
| TXDPS Offense Code: | 73990623 |
| Bexar County Offense Code: | _____ |
| Offense Date: | 05/22/2019 |

2. Affiant believes, and hereby charges and accuses, that the above-listed offense was committed in Bexar County, Texas on or about May 22, 2019 by the following named and described individual:

**Sylvia Ann Gonzalez, a white female, Date of Birth: 08/30/1946**
**(SID #: 1122375)**

3. Identification and qualifications of Affiant:

My name is Alex Wright and I am the Affiant herein. I am a peace officer under the laws of the State of Texas and am currently commissioned as a Special Detective with the Castle Hills Police Department ("CHPD") in Bexar County, Texas. In my role as a Special Detective I am assigned, as needed, to conduct investigations which might otherwise be considered sensitive, or delicate, either due to the nature of the crime or because of the parties involved. I have over twenty (20) years of experience as a police officer and hold a Master Peace Officer license from the Texas Commission on Law Enforcement. I am also a licensed police instructor and field training officer. During my tenure as a Texas peace officer I have received extensive training and experience in the field of criminal investigation and have participated in numerous investigations into a wide variety of both state and federal criminal law violations. I also have a Bachelor of Science degree in Criminal Justice with a major in Law Enforcement from Southwest Texas State University. I also have a Juris Doctorate degree from St. Mary's University School of Law, and I am licensed to practice law in the State of Texas and 14 other states.

4. I conducted interviews, obtained statements from witnesses, and reviewed evidence during which the following information and facts were obtained, causing me to have probable cause for the above-stated beliefs and accusations:

On June 18, 2019 I was contacted by CHPD Police Chief Johnny Siemens and was assigned as the lead investigator on this case, bearing CHPD Case No. 2019-06-0058.

I obtained the initial offense report which was written as a "Theft" report. The report referenced some petitions belonging to the city which were allegedly stolen by a Castle Hills alderman named Sylvia Ann Gonzalez (herein sometimes "Gonzalez" or "Defendant Gonzalez"). The Complainant is the current mayor of the City of Castle Hills, Texas, Edward "JR" Trevino II (herein sometimes "Mayor Trevino"). Another primary witness is CHPD Captain Esteban "Steve" Zuniga (herein sometimes "Capt. Zuniga").

On June 24, 2019 I met with Mayor Trevino (as the original Complainant) and interviewed him about the events in question, and he responded by providing me with the following facts:

Defendant Gonzalez was, until July 9, 2019, serving as an alderwoman for the City of Castle Hills, Texas. From her very first meeting in May of 2019 she (along with another alderwoman) has been openly antagonistic to the city manager, Ryan Rapelye, wanting desperately to get him fired. Part of her plan to oust Mr. Rapelye involved collecting signatures on several petitions to that effect.

On the evening of May 21, 2019 a public meeting of the Castle Hills City Council was held at city hall, located at 209 Lemonwood Dr., Castle Hills, Bexar County, Texas 78213. This meeting was presided over by Mayor Trevino. During the public commentary portion of the meeting, a citizen presented twenty-six (26) separate petitions (the "Petitions") to Mayor Trevino which each called for the removal of the city manager Ryan Rapelye (under the guise of "FIX OUR STREETS"). As the presiding officer of the city council meeting, Mayor Trevino accepted the Petitions as city property and put them among his papers for filing with the city secretary at the conclusion of the meeting. At that moment the Petitions became city property and "governmental records" as defined by §37.01(2), Penal Code.

Also during the public commentary portion of the meeting, a citizen named Chalene Martinez took the microphone and said that Defendant Gonzalez had personally come to her home to solicit her signature upon one of the Petitions. Ms. Martinez then publically accused Gonzalez of misleading her regarding the actual nature and purpose of the petitions, and said that Gonzalez asked her to sign under false pretenses. The council meeting went long and due to the lateness of the hour Mayor Trevino announced a recess and said that the meeting would resume at 4pm the next day, May 22, 2019.

The following day, Mayor Trevino arrived early for the continuation of the city council meeting. In light of the serious allegations made by citizen Chalene Martinez the night before, Mayor Trevino used this time to start sifting through the Petitions in search of any anomalies. As the 4pm meeting start time drew near, Mayor Trevino attached a large black binder clip to the stack of 26 Petitions and placed them on top of his other paperwork, all of which was in his working area on the desktop of the dais (the "dais" is the bench at which the city council sits). During the meeting he noticed that the Petitions were gone and he assumed the city secretary had collected them. He also noticed that an identical binder clip and paper stack size was now inside Gonzalez' large 3-ring binder, but thought it to be a coincidence. Defendant Gonzalez' seat on the dais is to the right of, and adjacent to, Mayor Trevino's seat.

At the end of the meeting the city secretary asked Mayor Trevino for the original Petitions, causing him to realize that she hadn't collected them. These were the original Petitions, carried over from the previous night's meeting and were still in Mayor Trevino's possession as the presiding officer who received them. At this point, recalling seeing the same binder clip and paper stack size inside Defendant Gonzalez' 3-ring binder, Mayor Trevino suspected that Defendant Gonzalez had taken the Petitions. Mayor Trevino then waived to get the attention of CHPD Capt. Zuniga who was near the back of the room helping to shut off lights. Capt. Zuniga walked to where Mayor Trevino was standing on the dais.

(Note regarding Capt. Zuniga's presence at the meeting: *Each city department sends a representative to city council meetings so they are on-hand to answer any questions, as needed. On this particular evening Capt. Zuniga was representing the police department in the place of Chief Siemens who could not attend.*)

Mayor Trevino explained to Capt. Zuniga that he suspected Defendant Gonzalez had taken the Petitions. Mayor Trevino then observed as Capt. Zuniga asked Defendant Gonzalez if she had taken the Petitions, which Gonzalez promptly denied. Capt. Zuniga then asked Defendant Gonzalez if she was sure, at which point Gonzalez walked back to her spot on the dais. Once back at her seat with her 3-ring binder in front of her, Defendant Gonzalez opened her 3-ring binder and then started slowly flipping through its contents, stopping before reaching the black binder clip at which point she declared, again, that she did not have the Petitions. Mayor Trevino explained that the petitions were clearly visible but Gonzalez was just trying to avoid "finding" them. Mayor Trevino and Capt. Zuniga then both pointed to the clearly visible black binder clip at the back of Defendant Gonzalez' 3-ring binder. At that point Defendant Gonzalez simply pulled the black binder clip out of her 3-ring binder, revealing that these were indeed the missing original Petitions. As she produced the Petitions, Gonzalez never questioned that they belonged to the city or tried to claim that they were hers. As the incident drew to a close, the Petitions were given to the city secretary for safekeeping as governmental records.

On June 27, 2019 I met with Esteban "Steve" Zuniga, a Captain with the Castle Hills Police Department, and interviewed him about the events in question, and he responded by providing me with the following facts, which I found to be consistent with Mayor Trevino's statement of facts:

In addition to supporting the account of events provided to me by Mayor Trevino, Capt. Zuniga's account also mentions additional observations. Defendant Gonzalez twice denied having the Petitions. When Gonzalez did, eventually, pull the petitions out of her 3-ring binder, Capt. Zuniga reports that Gonzalez told him that she thought those were extras. But Capt. Zuniga found that statement odd because, if true, then he questioned why she twice told him, only moments before, that she did not have the Petitions in her binder. Further, if she thought she had a right to them (because they were copies) then surely she would have spoken up when asked. Also, Defendant Gonzalez moved very slowly while seemingly pretending to look for the Petitions in her 3-ring binder, which she ultimately found and produced.

I then watched the surveillance videos from the council chambers which covered the timeframe of the events previously described (which had previously been secured as evidence by officers prior to my assignment to the case). This is what I observed:

### Video 1 – Petitions Taken:

The time marks listed below do not refer to the time of day, but rather they refer to the minutes and seconds into the video at which that scene is visible.

4:34: For the first time this day, Gonzalez approaches her seat on the dais (to the right of, and adjacent to, Mayor Trevino's seat). At that time, Mayor Trevino is standing near his seat, but is facing the other way while engaged in a conversation. Gonzalez then moves to her left in order to reach over Mayor Trevino's stack of documents.

4:36: After looking around, Gonzalez picks up the Petitions from on top of Mayor Trevino's binder and quickly pulls them toward her seat. There is no mistaking that the Petitions were in the Mayor's pile of documents, not Gonzalez' pile.

4:41: Gonzalez turns the Petitions toward her, looks at them directly, and begins flipping through pages. There is no mistake—Gonzalez knows what she is holding.

4:43: Gonzalez organizes the Petitions by knocking them on the desk.

4:47: Gonzalez moves the Petitions to the desktop in front of her, lays them down on the desk to the right of her binder, and then opens her binder up so that the cover obscures the Petitions.

4:51: Mayor Trevino notices activity near his binder and reaches over to pick his binder up, not realizing that Gonzalez has just taken the Petitions.

This video clearly shows Defendant Gonzalez intentionally concealing and removing the Petitions from city custody.

### Video 2 – Petitions Recovered:

The time marks listed below do not refer to the time of day, but rather they refer to the minutes and seconds into the video at which that scene is visible.

1:40: It is evident that Mayor Trevino has realized that he no longer has the Petitions and returns to his seat on the dais to look for them.

1:43: Mayor Trevino bends over, looks at Gonzalez' binder, and confirms that the large binder clip is still inside her 3-ring binder. This is consistent with Mayor Trevino's sworn statement wherein he said he recalled seeing the binder clip in Defendant Gonzalez' 3-ring binder. At this same time Defendant Gonzalez can been seen at the far left side of the frame.

1:47: Mayor Trevino waves for Capt. Zuniga to come his way, toward the dais.

2:05: Mayor Trevino is talking to Capt. Zuniga.

3:16: Capt. Zuniga has walked to Defendant Gonzalez and is talking to her.

---



4:00: Defendant Gonzalez has returned to her seat position at the dais and has pulled her 3-ring binder toward her.

4:06: Defendant Gonzalez slowly flips through the contents of her binder, stopping before reaching the black binder clip. It appears as though Defendant Gonzalez was trying to avoid "finding" the Petitions which she has already affirmatively stated that she does not have.

4:20: Defendant Gonzalez appears to be running out of papers to slowly flip through and will soon reach the Petitions.

4:24: Mayor Trevino and Capt. Zuniga finally just point to the obvious binder clip containing the Petitions. It appears to me that Defendant Gonzalez realized that she could pretend no longer, so she simply pulled the Petitions out of her binder without further hesitation.

4:46: The Petitions are given to the custody of the city secretary for safekeeping as governmental records.

After watching these videos I was able to confirm the accounts of the events as they were given to me by Mayor Trevino and Capt. Zuniga.

Of particular note to me was that these videos show several furtive movements by Defendant Gonzalez. Gonzalez appeared to be purposefully avoiding "finding" the Petitions by feigning her failure to notice the obvious binder clip which those around her could clearly see. Also, she moved extremely slowly while looking through her 3-ring binder, only thumbing through a few pages at a time, much more slowly than someone would do if they were trying to prove that they didn't have the Petitions. It seemed as if she was wasting time hoping for some form of rescue.

On July 2, 2019 I met with Capt. Zuniga and obtained his sworn statement of the events, which was wholly consistent with the facts he provided to me during our previous interview.

On July 7, 2019 I met with Chalene Martinez, the citizen who spoke out against Gonzalez at the May 21, 2019 city council meeting. I interviewed her and obtained her sworn statement regarding the following events: Gonzalez had personally gone to Ms. Martinez' house on May 13, 2019 to get her signature on one of the petitions under false pretenses, by misleading her, and by telling her several fabrications regarding Ryan Rapelye which Ms. Martinez felt was damaging to his reputation. Although Defendant Gonzalez' interaction with Ms. Martinez does not have a direct bearing on the offense charged herein, it is relevant as it supports a motive for Defendant Gonzalez' desire to steal the petitions—before further scrutiny could be brought to bear upon Chalene Martinez' signature thereon.

On July 8, 2019 I met with Mayor Trevino and obtained his sworn statement of the events, which was wholly consistent with the facts he provided to me during our previous interview.

I also contacted Gonzalez several times during the course of my investigation, offering her the opportunity to give me her version of events; however she refused to talk to me.

<u>Complaint / Affidavit for Warrant of Arrest</u>-*Sylvia Ann Gonzalez*—Page 5 of 6    Affiant's Initials: 

**Exhibit "A"**

5. My interviews and investigation of the witnesses discussed above revealed them to all be credible and reliable, and I find their reputations for truth and veracity to be excellent.

6. I then compared the facts which I had learned during my investigation with the elements of the offense charged, above, and found that the elements had been satisfied, as follows:

**Tampering with Governmental Record**
§37.10(c)(1), Penal Code (MA)

A person commits an offense if the person:
1. intentionally
2. destroys, conceals, removes, or otherwise impairs
3. the verity, legibility, or availability
4. of a governmental record

"governmental record" means anything belonging to, received by, or kept by government for information. §37.01(2), Penal Code.

In this case, the governmental records are the 26 Petitions which Defendant Gonzalez intentionally concealed and/or removed from being available.

**Conclusion:**

After reviewing the above-described facts, circumstances, witness statements, surveillance videos, and other evidence, and after taking into account all statutory exceptions to criminal liability, if any, I have concluded my investigation in this case. <u>I have good reason to believe, and do believe,</u> that **Sylvia Ann Gonzalez** committed the above-listed offense, against the peace and dignity of the state.

**WHEREFORE,** I hereby pray for the issuance of a warrant of arrest authorizing the arrest of **Sylvia Ann Gonzalez** and charging that she has committed the above-listed offense.

Respectfully submitted,

Alex Wright, Affiant
Special Detective, Badge #410
Castle Hills Police Department

**SUBSCRIBED and SWORN** to before me by said Affiant on this the ____17____ day of July, A.D., 2019, at ____2:32____ o'clock ____P____ .M.

Hon. _____

Judge, ____175____ Judicial District Court

Bexar County, Texas