IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SYLVIA GONZALEZ, | § | |
| *Plaintiff,* | § | SA-20-CV-01151-DAE |
| vs. | § | |
| CITY OF CASTLE HILLS, TEXAS, JOHN SIEMENS, CHIEF OF THE CASTLE HILLS POLICE DEPARTMENT, SUED IN HIS INDIVIDUAL CAPACITY; ALEXANDER WRIGHT, SUED IN HIS INDIVIDUAL CAPACITY; AND EDWARD TREVINOII, MAYOR OF CASTLE HILLS, SUED IN HIS INDIVIDUAL CAPACITY, | § | |
| *Defendants.* | § | |

**ORDER**

Before the Court in the above-styled cause of action is Defendants' Opposed Motion for Limited Discovery [#46], which was referred to the undersigned for disposition. The undersigned held a hearing on the motion on November 15, 2024, at which counsel for both Plaintiff and Defendants appeared via videoconference. After considering Plaintiff's response to the motion [#49], Defendants' reply [#51], the parties' joint advisory [#52], and the arguments of the parties at the hearing, the Court will deny the motion for the reasons that follow.

**I.  Background**

Plaintiff Sylvia Gonzalez, former member of the City Council of the City of Castle Hills, Texas, filed this suit against the City of Castle Hills and its Mayor (Edward Trevino), its Chief of Police (John Siemens), and an attorney who allegedly acted as a special detective with the Castle Hills Police Department (Alexander Wright) for retaliatory arrest in violation of the First

1

Amendment pursuant to 42 U.S.C. § 1983.  Gonzalez alleges that Defendants engaged in a conspiracy to retaliate against her for her exercise of protected speech.  According to Gonzalez's Complaint, she spoke out against the Castle Hills City Manager, Ryan Raelye, and advocated for his removal from office by helping organize a citizen petition.  Gonzalez was thereafter arrested on misdemeanor charges for tampering with a government record in violation of Texas Penal Code § 37.10 for allegedly attempting to steal the citizen-signed petition for her own use (because it was found in her personal binder).

Defendants moved to dismiss Gonzalez's Complaint on several grounds, arguing that the independent-intermediary doctrine bars the claim of retaliatory arrest; that the individual Defendants are entitled to qualified immunity; and that Gonzalez failed to plead sufficient facts to support a claim of municipal liability against the City of Castle Hills.  The District Court denied the motion.  The District Court rejected Defendants' invocation of the independent-intermediary doctrine, concluding that Gonzalez had alleged sufficient facts to fall under an exception to the doctrine recognized by the Supreme Court in *Nieves v. Bartlett*, 587 U.S. 391 (2019).  Based on *Nieves*, the District Court found that Gonzalez had pleaded a violation of her First Amendment right to be free from a retaliatory arrest that was clearly established at the time of the actions giving rise to this suit and the individual Defendants had not shown they were entitled to qualified immunity.

The individual Defendants appealed the qualified-immunity ruling, and the Fifth Circuit reversed, concluding that the District Court has misconstrued *Nieves* and that Defendants were entitled to immunity.  *Gonzalez v. Trevino*, 42 F.4th 487 (5th Cir. 2022).  The Fifth Circuit remanded with instructions to the District Court to dismiss Gonzalez's claims against the individual Defendants on immunity grounds.  In response, Gonzalez filed a petition for writ of

certiorari to the United States Supreme Court, challenging the Fifth Circuit's ruling. The Supreme Court granted certiorari and vacated the Fifth Circuit's decision. *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam). The Supreme Court remanded the case to the Fifth Circuit with instructions "for the lower courts to assess whether Gonzalez's evidence suffices to satisfy the *Nieves* exception" based on their clarification of the doctrine provided in the opinion. *Id.* at 659. The Fifth Circuit thereafter remanded the case to the District Court to make this assessment. *Gonzalez v. Trevino*, 109 F.4th 853 (5th Cir. 2024) (per curiam).

Following remand, the District Court held a status conference with the parties, at which the District Court acknowledged that its order denying Defendants' motion to dismiss on qualified immunity grounds had been affirmed, meaning the case should proceed with a scheduling order and discovery in the usual manner, as if it had never been appealed to the Supreme Court. The District Court further indicated that Defendants could file a motion for summary judgment, supported by evidence, if they believed after discovery that they were entitled to summary judgment under the *Nieves* exception as defined and clarified by the Supreme Court in its remand order (or on any other basis). The District Court thereafter referred the case to the undersigned for a scheduling order. (Referral Order [#41].) Defendants then filed the motion for limited discovery currently before the Court, which was also referred for disposition. The motion is ripe for a ruling from the Court.

## II. Analysis

Defendants' discovery motion asks the Court to limit discovery to the facts Defendants believe are necessary to address the qualified immunity of the individual Defendants. Defendants believe they are entitled to phased discovery and that the parties should not proceed with full discovery until the Court rules on a future motion for summary judgment by the individual

Defendants based on the *Nieves* exception and qualified immunity. Gonzalez opposes the requested phased discovery, arguing that Defendants' proposed limitations on discovery do not comport with the Supreme Court's explanation of the *Nieves* exception and too narrowly frame the relevant factual issues. Gonzalez further argues that the request to limit discovery is nothing more than a "backdoor motion for reconsideration of the Court's earlier qualified immunity inquiry."

Defendants are, of course, correct that phased discovery may sometimes be appropriate to protect individual defendants from costly discovery when they may ultimately be found immune from suit. Qualified immunity "is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotation and citation omitted). "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). However, "a party asserting the defense of qualified immunity is not immune from all discovery, only that which is 'avoidable or overly broad.'" *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 994 (5th Cir. 1995) (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987)). After a district court has determined that a plaintiff has pleaded facts, which—if true—overcome the defense of qualified immunity, the district court "may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" *Backe*, 691 F.3d at 648 (quoting *Lion Boulos*, 834 F.2d at 507–08). Such discovery is "neither avoidable nor overly broad." *Wicks*, 41 F.3d at 994.

In this case, the District Court has held that Gonzalez has pleaded facts sufficient to overcome the defense of qualified immunity. This ruling remains undisturbed. The Supreme

Court has clarified the contours of the *Nieves* exception and directed the District Court to evaluate the exception on an evidentiary record.

The question before the Court is therefore what discovery must occur to evaluate the qualified immunity of the individual Defendants and whether full discovery on the facts alleged in this case would subject the individual Defendants to costly additional discovery that is "avoidable and overly broad." Gonzalez persuasively argues that Defendants are attempting to frame the qualified-immunity inquiry too narrowly and in a manner that is not faithful to the Supreme Court's explanation of the *Nieves* exception and its application to the facts of this case. Further, based on the specific legal issues and the Defendants named in this lawsuit, the Court finds that allowing full discovery would not subject the individual Defendants to overly broad discovery that would be avoidable if the individual Defendants were ultimately found immune at the summary-judgment stage based on the defense of qualified immunity.

Gonzalez's Complaint alleges a single claim of retaliatory arrest against both the City of Castle Hills (based on its *Monell* liability) and the individual Defendants. A claim of retaliatory arrest requires proof of three elements: (1) engagement in a constitutionally protected activity; (2) an injury caused by the defendant's actions that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse actions were substantially motivated by the plaintiff's exercise of constitutionally protected activity. *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (per curiam) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). The third element—causation—is the primary element in dispute.

The presence of probable cause for an arrest generally defeats the causation element of a retaliatory-arrest claim. *Nieves*, 587 U.S. at 405. Under the independent-intermediary doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate

or grand jury, the intermediary's decision breaks the chain of causation" and thereby "insulat[es] the initiating party." *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (quoting *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017)). Defendants argued in their motion to dismiss that Gonzalez's Complaint should be dismissed in its entirety pursuant to this doctrine because Gonzalez was arrested pursuant to a warrant based on a probable-cause finding by a county magistrate.

The *Nieves* exception at issue in the Fifth Circuit and Supreme Court's opinions is an exception to the independent-intermediary doctrine, which provides that a person can still prevail on a retaliatory-arrest claim even where there was probable cause for the arrest, if the person can demonstrate through "objective evidence that [s]he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407. In other words, if a person can show that the arresting officers may have used their arrest powers as a means of retaliation despite having legal grounds to do so, a retaliatory-arrest claim does not fail as a matter of law simply because there was probable cause for the arrest.

Applied here, the District Court reasoned that Gonzalez's Complaint pleads sufficient facts to plausibly fall under the *Nieves* exception because Gonzalez alleges that the misdemeanor offense with which she was charged, Texas Penal Code § 37.10, has never been used in Bexar County to criminally charge someone for trying to steal a "nonbinding or expressive document." (Compl. [#1], at ¶ 105.) The District Court also relied upon Gonzalez's allegation that she had reviewed 215 grand jury felony indictments under the tampering statute, none of which involved allegations comparable to Gonzalez's arrest. (*Id.* at ¶ 106.) The Fifth Circuit, in its review of the District Court's qualified-immunity ruling, framed the exception far more narrowly, concluding that *Nieves* required Gonzalez to plead and prove the existence of comparative evidence of other similarly situated individuals who engaged in the same criminal conduct but were not arrested.

6

*Gonzalez*, 42 F.4th at 492. The Supreme Court rejected the Fifth Circuit's interpretation as "overly cramped" and explained that *Nieves* does not require a plaintiff to produce "virtually identical and identifiable comparators" to fall within the exception. *Gonzalez*, 602 U.S. at 658. Moreover, the Supreme Court agreed with the District Court that the objective evidence alleged in Gonzalez's Complaint (a survey of indictments under the statute) was a "permissible type of evidence" contemplated by *Nieves*, because "the fact that no one has ever been arrested for engaging in a certain type of conduct—especially when the criminal prohibition is longstanding and the conduct at issue is not novel—makes it more likely that an officer *has* declined to arrest someone for engaging in such conduct in the past." *Id.* (emphasis in original).

To overcome the individual Defendants' defense of qualified immunity presented in a motion for summary judgment after discovery, Gonzalez must produce evidence raising a genuine dispute of material fact on the question of whether the individual Defendants violated a clearly established constitutional right to be free from a retaliatory arrest. *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020). To prove a constitutional violation, Gonzalez must produce evidence to support her allegation that her retaliatory-arrest claim is saved by the *Nieves* exception, i.e., that there is objective evidence that Defendants used legal process to advance a retaliatory purpose. Gonzalez's theory as pleaded in her Complaint (and approved by the Supreme Court) is that her arrest was an extreme outlier within the history of arrests for violations of Texas Penal Code § 37.10.

If Gonzalez can satisfy the threshold inquiry into the *Nieves* exception, she must then still show that retaliation was a substantial or motivating factor behind the arrest.[1] *Mt. Healthy City*

---

[1] First Amendment retaliation claims are typically analyzed under the two-step framework set out in *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977). *Gonzalez*, 602 U.S. at 662–63 (Alito, J., concurring). At the first step, the plaintiff must demonstrate that she engaged in

7

*Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). In addition to her allegations regarding the history and survey of prosecutions under § 37.10, Gonzalez alleges there is ample other evidence of Defendants' retaliatory purpose in effectuating her arrest after she spoke out against the Castle Hills City Manager and advocated for his removal of office through a citizen-signed petition.

According to her Complaint, after the meeting at which the petition was presented and at which a copy of the petition was found in her binder, the following occurred: (1) a City councilmember wrote an article in the City's newsletter explaining that a conviction of a misdemeanor involving official misconduct operates as an immediate removal from office; (2) Defendant Turner went door to door to the homes of citizens who had signed the petition, questioning them about their participation after the meeting; (3) the City hired Defendant Wright as a private investigator to identify possible wrongdoing by Gonzalez; (4) Defendants attempted to remove her from her seat on the City Council on the basis that she had been improperly sworn in by a sheriff who was not carrying out his official duties at the time; (5) when that was unsuccessful, Defendants obtained a warrant, rather than a misdemeanor summons (the procedure normally reserved for those suspected of nonviolent crimes), for her arrest for tampering with a government record, which required her to spend a day in jail; (6) several Castle Hill residents filed a lawsuit in the name of the State of Texas to remove her from City Council for official misconduct; and (7) when the criminal charges were dropped, the six citizens appealed the determination, then

---

protected speech and that her speech was a substantial or motivating factor in the defendant's decision to take action against her. *Id.* "Once the plaintiff makes this showing, the burden shifts to the defendant at the second step to show that he would have taken the same adverse action even in the absence of the protected speech." *Id.* at 663. To carry these burdens, parties operating within the *Mt. Healthy* framework may present a wide range of evidence—both objective and subjective." *Id.*

refused to release her from the civil lawsuit until she signed an affidavit stating she would never again run for City Council. Evidence related to these allegations pertains to the causation inquiry for Gonzalez's retaliatory arrest claims against all Defendants (both the City and the individual Defendants) and whether Gonzalez can ultimately raise a fact issue to survive a motion for summary judgment based on qualified immunity. The threshold *Nieves* inquiry is only part of the causation inquiry.[2]

Neither the Supreme Court nor the Fifth Circuit directed the District Court to proceed to a trial on the merits on *only* the threshold question of the applicability of the *Nieves* exception. And it would defy reason to do so. Again, if presented with a motion for summary judgment by the individual Defendants based on qualified immunity, Gonzalez must prove there is a genuine issue of material fact as to a clearly established constitutional violation, which requires she *both* proffer evidence to support her theory of the *Nieves* exception in this case *and* (if successful) proffer evidence of the individual Defendants' retaliatory motive. In addition, to survive a motion for summary judgment by the City (which is not entitled to qualified immunity), Gonzales would likely rely on this same evidence related to the retaliatory motives of those who were acting on behalf of the City, including the individual Defendants.

Defendants ask the Court to limit discovery to the following two categories of information: (1) discovery about whether each individual Defendant had a history of not charging others for the Penal Code § 37.10 offense, or alternatively, that they were aware that doing so was abnormal or

---

[2] The Supreme Court's per curiam opinion in this case included multiple concurring and dissenting opinions. At least some of the Justices joining in the per curiam opinion believed that all of this objective evidence could bear on the question of whether this case falls under the *Nieves* exception. *See Gonzalez*, 602 U.S. at 676 (Jackson, J., Sotomayor, J., concurring) ("On remand, the lower courts may consider the full scope of objective evidence that Gonzalez has offered to establish differential treatment.").

unusual; and (2) discovery about the role of each individual sued here—whether each took wrongful actions (violations of clearly established rights) that caused the arrest to take place. Although this discovery is undoubtedly relevant to the qualified-immunity inquiry, it does not encompass all the factual issues implicated by the *Nieves* exception or the *Mt. Healthy* causation standard. First, Gonzalez's allegations regarding the history of prosecutions under § 37.10 in Bexar County for purposes of satisfying the *Nieves* exception are not limited only to each individual Defendant's personal involvement in such prosecutions. The City of Castle Hills' practices with respect to criminal prosecutions under the statute are relevant, regardless of whether the individual officers who have been sued in this case participated personally in the prosecution. Second, as made clear by the breadth of Gonzalez's allegations regarding the retaliatory motives of the individual Defendants, discovery is warranted on all the events surrounding the City Council meeting, the alleged stealing of the petition, the subsequent investigation into Gonzalez's conduct, and her ensuing prosecution.

Finally, as is mentioned above, it bears emphasizing that the same discovery needed to evaluate whether Gonzalez can overcome the individual Defendants' defense of qualified immunity also is needed to develop her retaliatory-arrest claim against the City of Castle Hills based on its municipal liability. Gonzalez alleges that the City of Castle Hills has a widespread practice and custom of retaliating against city residents who voice criticism of City officials or petition the City for redress of grievances and an official policy to retaliate against Gonzalez specifically for her First Amendment activities. (Compl. [#1], at ¶¶ 151, 164.) The District Court denied Defendants' motion to dismiss as to this claim as well, holding that Gonzalez had alleged a retaliatory policy or custom of the City of Castle Hills that was the moving force behind the alleged constitutional violation. Any evidence of an official policy or custom of the City of Castle

10

Hills that is arguably retaliatory or evidence of how certain policies are executed (including by the individual Defendants in Gonzalez's situation or in other situations) could be probative of retaliatory motive and may bear on the Court's qualified-immunity determination.

In summary, the factual and legal issues implicated by a motion for summary judgment by the individual Defendants on qualified immunity are broad, as they encompass both subjective and objective evidence regarding the alleged retaliatory motivations behind Gonzalez's arrest. Defendants have not articulated a workable way for the Court to sever qualified-immunity discovery from full discovery on the events surrounding Gonzalez's arrest. Nor have they presented any cogent argument as to why full discovery would subject them to avoidable and overly broad discovery beyond what is relevant to qualified immunity. Moreover, their attempt to narrowly construe the issues is not defensible based on Gonzalez's theory of her case and the Supreme Court's clarification of the *Nieves* exception.

**IT IS THEREFORE ORDERED** that Defendants' Opposed Motion for Limited Discovery [#46] is **DENIED**. The Court will set this case for an initial pretrial conference by separate order to issue a Scheduling Order.

SIGNED this 21st day of November, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE